UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
═══════════════════════════════════

RYAN J. LAWS,

               Petitioner,

    v.

MICHAEL GIAMBRUNO, Superintendent of
    Groveland Correctional Facility,

               Respondent.
═══════════════════════════════════

**DECISION AND ORDER**

**No. 03-CV-6142**

## INTRODUCTION

Petitioner, Ryan J. Laws ("Laws") filed this petition *pro se* for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 ("§ 2254") challenging his conviction in New York State County Court, Ontario County, on one count of Assault in the Second Degree (New York Penal Law ("P.L.") § 120.05(1)) and one count of Criminal Impersonation in the Second Degree (P.L. § 190.25(1)). Laws was convicted by a jury and sentenced to a determinate state prison term of four years for the assault and a concurrent determinate one-year sentence for the criminal impersonation. He is presently incarcerated at the Great Meadow Correctional Facility pursuant to other charges. For the reasons set forth below, Laws' § 2254 petition is dismissed.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

By Ontario County Indictment No. 99-10-211, the petitioner, Ryan J. Laws was charged with Assault in the Second Degree (P.L. § 120.05(1)), Criminal Impersonation in the Second Degree (P.L. § 190.25(1)), Criminal Mischief in the Fourth Degree (P.L. § 145.00(1)), and Endangering the Welfare of a Child (P.L.

§ 260.10(1)).  Laws proceeded to a jury trial before the Honorable Craig Doran on May 10, 2000.

The charges stemmed from an incident that occurred in the early morning hours of December 3, 1999, at the trailer-home of Christopher Fowler ("Fowler") and Paula Farrell ("Farrell").  Prior to the incident, Laws and his companion, Angie Hunt ("Hunt"), had been living at Fowler and Farrell's trailer for approximately a month-and-a-half, babysitting minor children in return for living there. T.[1] 173, 302.  On the night of December 2, 1999, however, Laws and Hunt decided to quickly move out of the trailer and turned the radio to mask the sounds of their packing. T. 304.  Around 12:30 a.m., Laws "cranked the tunes" in an attempt to awaken Fowler and Farrell and tell them that he and Hunt were moving out. Id.  When Fowler was roused by the loud music, he went to ask Laws to turn the music down.  T. 174.  When Laws refused to turn down the music, Fowler went back to his bedroom to ask Farrell to "take care" of the situation.  T. 175.  As Farrell went out into the living room, Laws was "babbling" about how Fowler and Farrell were "nothing" and their trailer was "nothing." T. 215.  At this point, Fowler entered the living room and was pushed by Laws. T. 176-77, 215.  Fowler then attempted to leave the trailer and seek assistance from a next-door neighbor, Jason Perri, but Laws shoved him out the door. T. 177.  Fowler went running back into the house and a fight ensued. Id.  Fowler testified at trial that Laws threw him against the wall, shattering the window, and threw him onto the

---

[1] Citations to "T." refer to the trial transcript.

coffee table, breaking the coffee table. T. 177-179. During the fight, Laws admitted that he "threw [Fowler] in a head-lock," but stated that he did not intend to harm him. T. 314. It is disputed whether Fowler's four-year old son was present during the fight. T. 181, 306.

Meanwhile, Farrell had left the house and went to the corner gas station to call the police. T. 218-19. Upon returning to the trailer, Farrell observed Fowler to be injured and took him to the hospital. T. 219, 221. At the hospital, Fowler was treated for a broken collarbone, a chipped tooth, a black eye, and various scratches and bruises. T. 186-91. Fowler's injuries made it difficult for him to breathe, and rendered him unable to work. T. 186-87, 195. At the time of the trial, Fowler's collarbone had not completely healed and required surgery to repair it. T. 187. Fowler, however, was unable to afford the required surgery. Id.

In response to Farrell's 9-1-1 call, Deputy Paul Vanderlike, a Ontario County Sheriff's road deputy, went to the hospital to interview Fowler and arranged for photographs to be taken of his injuries. T. 236-38. Vanderlike also transmitted a description of Laws to Sergeant Frasca of the Ontario County Sheriff's department, who ran a check on Laws and found a photo of Laws along with an open arrest warrant. T. 262. Sergeant Frasca requested assistance from two other officers and went to the trailer park. Id. At the trailer park, the officers approached a neighboring trailer and Sergeant Frasca saw a male who he believed was Laws. T. 264. As Sergeant Frasca knocked on the door of the trailer, the male jumped

off the couch and ran towards the back room. Id. Sergeant Frasca quickly located the man, who was hiding under a cot, and asked for him to identified himself. T. 268. While Laws claims that he did not respond and stated that he had no identification on him, Sergeant Frasca asserts that Laws identified himself at that point as "Jarrett Elmore." T. 268, 310. Sergeant Frasca proceeded to frisk him and found a wallet containing Jarrett Elmore's[2] identification. T. 269. Since Sergeant Frasca had no evidence that the male was actually Laws, he left the trailer. T. 272.

A few hours later, Sergeant Frasca learned that the male inside the trailer was in fact Laws, and he conducted a second search of the area following which Laws was placed under arrest at the Mobil Mart. Tr. 272-74. Sergeant Frasca did not observe any evidence of injuries on Laws, nor did Laws complain that he was injured. T. 276, 281.

At trial, Laws' motion to dismiss the case based on the prosecution's failure to prove a prima facie case was denied in its entirety. T. 297-99. The jury then found Laws guilty of Assault in the Second Degree and Criminal Impersonation in the Second Degree, while finding him not guilty of Criminal Mischief and Endangering the Welfare of a Child. T. 490-91. On May 26, 2000, Laws was sentenced to a determinate term of four years incarceration for the assault conviction along with a concurrent determinate term of one

---

[2]At trial, both parties stipulated that "Jarrett Elmore" was a real person and Laws had no authority to be in possession of Elmore's identification. T. 171.

year for his criminal impersonation conviction. S.[3] 14-15. The New York State Supreme Court, Appellate Division, Fourth Department unanimously affirmed his conviction. See People v. Laws, 286 A.D.2d 991 (4th Dept. 2001). The New York Court of Appeals denied leave to appeal on January 28, 2002. See People v. Laws, 97 N.Y.2d 706 (2002). Laws did not seek a writ of *certiorari* from the United States Supreme Court.

On December 10, 2004, Laws moved to vacate the judgment of conviction pursuant to New York Criminal Procedure Law ("C.P.L.") § 440.10. See Petitioner's *pro se* C.P.L. § 440.10 motion (Docket No. 8, Exhibit F). In support of his motion, Laws claimed that he received ineffective assistance of counsel, and that the prosecution failed to disclose Brady material. The trial court denied the motion in its entirety based on Laws' failure to raise the claim of ineffective assistance of counsel on direct appeal and Laws' argument regarding the Brady violation was directed at information from witnesses that were called by the defense, not the People. See County Court Order dated January 14, 2002, p. 2 (Docket No. 8, Exhibit H).

Finally, Laws filed a motion for a writ of error *coram nobis* in May of 2002. See Petitioner's *pro se* motion for writ of error *coram nobis* (Docket No. 8, Exhibit I). In his motion, Laws argued that he received ineffective assistance from his appellate counsel based on his appellate counsel's failure to challenge Laws' trial

---

[3] Citations to "S." refer to the sentencing minutes.

-5-

counsel as ineffective. This motion was denied by the New York State Supreme Court, Appellate Division, Fourth Department on February 7, 2003, without an accompanying opinion. See People v. Laws, 302 A.D.2d 1020 (4th 2003).

This federal habeas corpus petition followed on March 28, 2003. In Laws' habeas petition, he argues that he is entitled to relief on the grounds that: (1) there was insufficient evidence to establish that the alleged victim sustained a serious physical injury (Claim I); (2) the verdict was against the weight of the evidence (Claim II); (3) the statute under which he was convicted did not apply to the facts of the case (Claim III); and (4) his sentence was harsh and excessive (Claim IV).

## DISCUSSION

### "In Custody" Requirement

Laws was released from state prison on February 1, 2005. His release, however, does not moot this petition for habeas relief. Although a petitioner may file a petition for habeas relief only if he is in custody, provided that the petitioner was in custody at the time the petition was filed, the habeas court will review the petitioner's petition. Wheel v. Robinson, 34 F.3d 60, 63 (2d Cir. 1994)(quoting Maleng v. Cook, 490 U.S. 488, 490-91 (1989) (per curiam) (in turn citing Carafas v. LaVallee, 391 U.S. 234, 238 (1968)); accord Spencer v. Kemna, 523 U.S. 1, 7 (1998) (holding that the "in custody" provision only requires that the petitioner be in custody at the time the petition is filed). Since Laws filed

-6-

his habeas petition during his incarceration, he satisfies the "in custody" requirement of § 2254.

Moreover, the Supreme Court has held that a habeas petition, which is challenging a criminal conviction, is "not necessarily mooted when the petitioner is released from prison, as collateral consequences of that conviction may still impinge on the petitioner post-release, and therefore a case or controversy may continue to exist." Perez v. Greiner, 296 F.3d 123, 125 (2d Cir. 2002) (citing Pollard v. United States, 352 U.S. 354, 358 (1957); Sibron v. New York, 392 U.S. 40, 54-56 (1968) (citing deportation, inability to become a citizen, impeachment evidence in future criminal trials, and increased future sentences as examples of collateral consequences and asserting a presumption that these consequences attach to criminal convictions post-release)). However, once a petitioner is no longer incarcerated, he must show "some concrete and continuing injury other than the now-ended incarceration or parole-some 'collateral consequence' of the conviction . . . if the suit is to be maintained." Spencer, 523 U.S. at 7 (quoting Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968)).

For petitioners such as Laws, who are challenging the validity of their criminal convictions in federal courts, the Supreme Court has "been willing to *presume* that a wrongful criminal conviction has continuing collateral consequences" so that their habeas petitions do not become moot after their release. Id. at 8 (emphasis added).  Since the presumption of collateral consequences

-7-

is applicable here, the Court finds that, notwithstanding his release from incarceration on this conviction, Laws' habeas petition presents a justiciable "case or controversy" for purposes of conferring subject matter jurisdiction under Article III, Section 2 of the United States Constitution. See U.S. Const. art. III, § 2.

**Exhaustion Requirement**

_____In seeking a writ of habeas corpus in federal court, Laws must have exhausted all available state remedies either on direct appeal or through a collateral attack on his conviction. 28 U.S.C. § 2254(b); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994), cert. denied, 514 U.S. 1054 (1995). In addition, Laws must have presented the substance of each of his federal claims to the highest state court from which a decision can be obtained. See Daye v. Attorney General of State of N.Y., 696 F.2d 186, 190 (2d Cir. 1982).

Respondent does not raise exhaustion issues with regards to Laws' Claims I, II, and IV. However, Respondent specifically argues that Laws' claim that the assault statute under which he was convicted does not apply to the facts of his case (Claim III) is unexhausted, as it has not been presented to a state court at any level. See Respondent's Memorandum of Law ("Resp't. Mem.") at 20, 26 (Docket No. 7). Having reviewed the record, I find that Claim III is unexhausted because there is no indication that Laws presented this claim to any state court. However, because federal

courts have the discretion to deny a petitioner's unexhausted claims on the merits, these claim may be deemed exhausted for the purposes of habeas review. See 28 U.S.C. § 2254(b).

Claim III is deemed exhausted for the purposes of this habeas review since Laws can no longer exhaust this claim in state court, as he is barred from making any additional leave application to appeal in state court following the denial of his first application by the Court of Appeals. See N.Y. COURT RULES § 500.10(a) (only one leave application available); Bossett v. Walker, 41 F.3d 825, 829 (2d Cir.1994), cert. denied, 514 U.S. 1054 (1995). In addition, he has been foreclosed from bringing these claims in the state courts as a collateral attack on his conviction because the claims either were raised or could have been raised on his direct appeal. See N.Y. CRIM. PROC. LAW § 440.10(2)(a), (c). The state's procedural rules bar Laws from presenting Claim III in state court, causing this Court to "deem" the claim as exhausted, however the mechanism by which the claim was constructively exhausted also creates a state-court procedural default. See Bossett, 41 F.3d at 829. Under a procedural default, habeas review is barred unless Laws can establish cause and prejudice for the default or demonstrate that failing to consider his federal claims will result in a "fundamental miscarriage of justice." See Harris v. Reed, 489 U.S. 255, 262 (1989) (citations & internal quotations omitted); see also, e.g., Schlup v. Delo, 513 U.S. 298, 314-16 (1995).

Laws has demonstrated neither cause for his default and prejudice resulting therefrom, nor that dismissal of the petition without addressing the merits of the defaulted claim would amount to a "'fundamental miscarriage of justice.'" Jimenez v. Walker, 458 F.3d 130, 149 (2d Cir.2006), cert. denied sub nom. Jimenez v. Graham, 549 U.S. 1133 (2007) (quoting O'Sullivan v. Boerckel, 526 U.S. 838, 854 (1999)). I therefore find that habeas review of Claim III is precluded based on petitioner's inability, on the record before the Court, to overcome the procedural default. Accordingly, this claim (Claim III) is dismissed.

**Petitioner's State Law Claims**

Respondent does not challenge Claims II and IV on grounds of exhaustion but does challenge these claims on the basis that they exclusively raise state law concerns, and therefore are not cognizable on federal habeas review. See Resp't. Mem. at 25, 30 (Docket No. 7). In Claim II, Laws argues that the guilty verdicts were against the weight of the evidence pursuant to New York C.P.L. § 470.15[4] See Petition ("Pet.") at 2 (Docket No. 1). In Claim IV, Laws contends that his sentence is harsh and excessive for his status as a first-time felon. I conclude that these claims are not cognizable on federal habeas review, on the grounds that they raise

---

[4]Under New York law, an appellate court is permitted to reverse or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." See N.Y. CRIM. PROC. LAW §470.15(5); see also People v. Bleakley, 69 N.Y.2d 490, 515 N.Y.S.2d 761 (1987).

purely state law issues which are not cognizable on habeas corpus review in federal court.

First, Laws' claim that the verdict was against the weight of the evidence is derived from C.P.L. § 470.15(5), a New York State criminal procedure statute. Laws' weight-of-the-evidence claim therefore is based on a pure state law concern and cannot be cognizable on habeas review. <u>See</u> <u>Hernandez v. Conway</u>, 485 F.Supp. 2d 266, 274-75 (W.D.N.Y. 2007); <u>see</u> <u>also</u> 28 U.S.C. § 2254(a) (permitting federal habeas corpus review only where the petitioner has alleged that he is in state custody in violation of "the Constitution or a federal law or treaty"); <u>Estelle v. McGuire</u>, 502 U.S. 62, 68,(1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). In sum, Laws' claim (Claim II) does not raise a federal constitutional issue that is cognizable for federal habeas review, and is therefore dismissed from this petition.

Second, Laws argues that his sentence is harsh and excessive because he is only a first-time felon. Pet. at 2 (Docket No. 1). Laws points to the fact that the Pre-Sentencing Report ("PSR"), completed by the probation department, suggested the possibility of shock probation or a year sentence, both of which the judge specifically declined to grant. Laws also indicates that he was offered a three-year sentence during plea negotiations. <u>Id.</u>

Laws' contention that the trial judge abused his sentencing discretion is generally not a federal claim subject to review by a habeas court. See <u>Fielding v. LeFevre</u>, 548 F.2d 1102, 1109 (2d Cir. 1977) (petitioner raised no cognizable federal claim by seeking to prove that state judge abused his sentencing discretion by disregarding psychiatric reports) (citing <u>Townsend v. Burke</u>, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus."). A challenge to the term of a sentence does not present a cognizable federal constitutional issue if the sentence falls within the statutory range. <u>White v. Keane</u>, 969 F.2d 1381, 1383 (2d Cir. 1992); <u>accord</u> <u>Ross v. Gavin</u>, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion).

The sentencing guidelines under New York Penal Law § 70.02 establishes that those found guilty of Assault in the Second Degree must be sentenced to a term of incarceration of "at least two years" but "not [to] exceed seven years." <u>See</u> N.Y. P.L. § 70.02(1)(c), (2)(c), (3)(c). Laws' determinate sentence of four years, which ran concurrently with his one-year sentence for Criminal Impersonation in the Second Degree, was well within the statutory limit. <u>See</u> N.Y. P.L. § 70.02(3)(c). Accordingly, Laws' sentencing claim (Claim IV) is not cognizable on federal habeas review and therefore dismissed.

**Procedural Default**

Under Claim I, Laws argues that there was insufficient evidence at the trial to establish a serious physical injury had been sustained by Fowler. Pet. at 2 (Docket No. 1). On direct appeal, however, the Appellate Division rejected Laws' claim of insufficient evidence by stating:

> Defendant failed to preserve for our review his contention that the evidence is legally insufficient to support the conviction of assault in the second degree (see, People v. Gray, 86 N.Y.2d 10, 19).

People v. Laws, 286 A.D.2d 991 (4th Dept. 1995). Although the Appellate Division found that Laws' contentions regarding the sufficiency of the evidence were unpreserved for review, it nevertheless ruled that the claim was without merit. Id.

Respondent contends that in dismissing this claim, the Appellate Division invoked a procedural bar based on an adequate and independent state procedural ground, thus barring this Court from reviewing the claim for habeas relief. See Resp't. Mem. at 20 (Docket No. 7). I agree with Respondent's contention, as it is well-settled that "federal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground [for dismissing a claim], even where the state court has also ruled in the alternative on the merits of the federal claim." See Velasquez v. Leonardo, 898 F.2d 7, 9 (2d Cir. 1990). Here, the Appellate Division relied on New York's "contemporaneous objection rule" to hold that Laws had

failed to object and preserve his argument that there was insufficient evidence, which demonstrates that the court's decision that the claim was unpreserved rested on a state procedural rule. See N.Y. CRIM. PROC. LAW §470.05(2).

This Court may reach Laws' unpreserved claim of insufficient evidence, despite the procedural default, if he can demonstrate cause for the default and prejudice, or that failure to consider the claim will result in a miscarriage of justice. See Coleman v. Thompson, 501 U.S. 722, 750 (1991). A fundamental miscarriage of justice means a "constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). Laws fails to meet the stringent requirements to show that a miscarriage of justice would result were this Court not to address the merits of Claim I. Laws also fails to convey any reason in this petition for cause and/or prejudice that would be sufficient to excuse procedural default. "[T]he existence of cause for a procedural default must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." Id. at 488. Laws does not raise any reason for the cause and does not claim ineffective assistance of counsel at trial in this petition for habeas relief. Even if he were to assert ineffective assistance of counsel, upon reviewing the record before this Court, Laws can make no showing that counsel was "so ineffective as to violate the Federal Constitution." Id.

I therefore find that Laws cannot show cause for the procedural default and prejudice attributable thereto. Accordingly, Laws' claim of insufficient evidence to prove a serious physical injury (Claim I) is procedurally barred from habeas review and dismissed.

## CONCLUSION

For the reasons stated above, Ryan J. Laws' petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety, and the petition is dismissed. Further, because Laws has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. See 28 U.S.C. § 2253.

**ALL OF THE ABOVE IS SO ORDERED**

s/Michael A. Telesca

MICHAEL A. TELESCA
United States District Judge

Dated:    Rochester, New York
          July 14, 2009